UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTINE J.,[1]

                         Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

_____

              DECISION AND ORDER

              1:20-CV-0622 CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI") benefits.   Now before the Court is Plaintiff's motion (ECF No.12) for judgment on the pleadings and Defendant's cross-motion (ECF No. 14) for the same relief.   For the reasons discussed below, Plaintiff's application is granted and Defendant's application is denied.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402,

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also,*

*Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

In the administrative proceedings before the Commissioner, Plaintiff claimed to have become disabled as of October 9, 2015, due to a combination of "low-back pain, neck pain, some cervical radiculopathy and right shoulder pain." Tr. 36.   These ailments resulted from a motor vehicle accident ("MVA") that occurred on the alleged disability onset date. Tr. 19, 41. Prior to the MVA, Plaintiff worked as a healthcare aide. Tr.36.   The ALJ noted that Plaintiff had "a solid work history." Tr. 20.

For almost two years after the MVA, Plaintiff complained of problems with her neck and right shoulder.   Diagnostic testing indicated degenerative changes in the cervical spine and shoulder.   In or about April 2017, Plaintiff also subsequently began complaining of low-back pain, and diagnostic testing indicated degenerative changes in the lumbar spine. Tr. 19. Plaintiff, who was initially told that she was not a candidate for surgery, pursued relief of her symptoms with prescribed medications, chiropractic, physical therapy and pain injections. However, Plaintiff maintains that these treatments were not effective. Tr. 45, 53.   Shortly before the administrative hearing, Plaintiff met with a new neurologist, Seth Zeidman, M.D. ("Zeidman"),

4

who recommended that she have fusion surgery on her lumbar spine if an additional attempt at physical therapy did not bring her relief. Tr. 46, 457.

On January 24, 2017, Brian Wood, M.D. ("Wood"), a treating physical medicine and rehabilitation specialist, completed an RFC evaluation ("disability paperwork") for Plaintiff. Tr. 350–356.   Wood indicated that his diagnoses were "cervical spasm, spondylosis," and that Plaintiff's symptoms consisted of "weakness, pain." Tr. 351.   Wood's prognosis was that the condition would last from "10–12" months. Tr. 351.   Wood indicated that Plaintiff had full range of motion in her shoulder and cervical spine, but with pain, as well as full range of motion in her elbow and wrist, with weakness. Tr. 352.   Wood did not indicate that Plaintiff had any problems with her lumbar spine. Tr. 352.   Wood stated that Plaintiff could frequently lift 20 pounds, but that she had some weakness in her elbow and wrist with regard to pushing. Tr. 355.   Wood indicated that Plaintiff had no limitations on her ability to stand, walk or sit. Tr. 355.

On March 10, 2017, Harbinder Toor, M.D. ("Toor") performed a consultative internal medicine examination of Plaintiff at the Commissioner's request.   Toor noted that Plaintiff's complaints involved pain in her neck and right shoulder related to her MVA. Tr. 366.   Plaintiff reportedly stated that she had difficulty using her right hand, as well as difficulty pushing, pulling, lifting, reaching, twisting, bending, or sitting. Tr. 366.   Plaintiff indicated, though, that she could still cook, clean, do laundry, shop, care for her personal needs and care for her children. Tr. 366. Upon examination, Toor reported that Plaintiff was obese and appeared to be in moderate pain, with a normal gait, and was able to rise from her chair and get on an off the examining table without difficulty. Tr. 367.   Toor noted reduced range of motion in the cervical spine, lumbar spine and right shoulder, and reported that Plaintiff complained of tingling and numbness in the

5

right arm. Tr.   Otherwise, Toor reported normal neurologic findings and full strength in the upper and lower extremities. Tr 368.   Toor also noted that Plaintiff's right hand and finger dexterity was "not intact," and that she had reduced grip strength (3/5) in her right hand. Tr. 368. Toor's diagnoses were as follows: History of MVA with injury to neck and right shoulder, history of right arm pain, history of upper back pain, history of sinusitis, history of blurred vision and history of hypertension. Tr. 369.   Toor's medical source statement was as follows:

> She has moderate to marked limitations reaching, pushing, pulling, and lifting with the right shoulder due to injury and pain.   She has moderate limitations doing fine motor activity with the right hand.   She has moderate limitations twisting the cervical spine, sitting or bending.

Tr. 369.   Although Toor reported reduced range of motion in the lumbar spine, he did not make any diagnosis concerning the lumbar spine.   Indeed, Toor's examination was performed prior to Plaintiff's April 2017 diagnosis of lumbar radiculopathy. Tr. 19.

On April 27, 2018, treating physical medicine and rehabilitation specialist Clifford Ameduri ("Ameduri") wrote a letter for Plaintiff stating:

> Sirs:   It is my professional opinion that this individual has physical injuries that prevent her from working 20 hours per week.   Please feel free to contact me if you have any questions.

Tr. 384.   Ameduri's statement was evidently made in support of Plaintiff's application for benefits under the Supplemental Nutrition Assistance Program (SNAP), which requires recipients to work a certain minimum number of hours per week. Tr. 384.

On October 3, 2018, after Plaintiff's claim was denied initially, a hearing was conducted before an ALJ, at which Plaintiff, who was represented by an attorney, testified, along with a vocational expert ("VE").   At the start of the hearing, Plaintiff's attorney agreed that the

documentary evidentiary record was complete, except for some additional records that he wanted to obtain from Plaintiff's treating neurologist. Tr. 33-34.   The ALJ agreed to leave the record open for that purpose, and Plaintiff's counsel obtained and submitted the additional records. Tr. 12, 34.   Plaintiff never indicated, before the ALJ or the Appeals Council, that treatment records were missing.   Nor did Plaintiff testify at the hearing to any mental health problems, except for a vague reference to forgetfulness secondary to low-back pain. Tr. 52.

Plaintiff had not included hypertension in her list of disabling impairments. Tr. 216. Rather, Plaintiff's pre-hearing brief stated that her impairments consisted of low back pain, neck pain, anxiety, wrist pain, cervical radiculopathy and right shoulder pain. Tr. 216.   However, at the hearing Plaintiff indicated that she also had hypertension, caused by her use of anti-inflammatory pain medications. Tr. 47.   Plaintiff stated that she had stopped using the anti-inflammatory drugs but that her blood pressure was "still running high." Tr. 47.   Plaintiff, though, did not indicate that her hypertension caused any functional limitations.   The ALJ asked Plaintiff whether she had any additional impairments other than those already mentioned, and she indicated that she did not.[3]

Plaintiff alleged that her impairments made it difficult for her to lift, bend, stand, sit and walk. Tr. 42.   Plaintiff stated that she could walk for approximately 30 minutes while shopping, stand for 15 or 20 minutes, and sit for 30 minutes before needing to change position. Tr. 42–43. Plaintiff, who is right handed, claimed to have little or no use of her right hand or arm, including no ability to reach overhead. Tr. 44–45.   Plaintiff indicated that she could reach with the right

---

[3] Tr. 47 (ALJ: Okay.   Are there any other impairments that you have that you feel affect your ability to work? Plaintiff: Other than – no, it's just -- those are all my symptoms.").

hand and arm generally, though not "up high," and that she could reach without limitation using her left hand and arm. Tr. 45.   Plaintiff stated that she had difficulty turning her head.   Plaintiff indicated that she was unable to lift anything, since she had occasional numbness in her right hand, and sometimes dropped things. Tr. 44.   Plaintiff stated that she was unable to dress herself or perform any household chores. Tr. 48 ("I can't cook, I can't do no house chores, and basically I lay in bed all day.]").   Plaintiff indicated that she spent approximately 80% of her day lying in bed. Tr. 54.

Regarding the VE's testimony, the ALJ asked the VE, at the start of his testimony, to notify the ALJ whenever his testimony conflicted with information in the Dictionary of Occupational Titles ("DOT"). Tr. 55.   The ALJ asked the VE to consider a hypothetical claimant who, among other things, could not reach overhead with the right arm. Tr. 57.   Thereafter, the VE noted several instances in which his testimony conflicted with the DOT, explaining that the basis for the difference, in each instance, was his own experience in observing how certain jobs were actually performed was different than what was described in the DOT. *See, e.g.*, Tr. 59, 60.   For example, when identifying jobs that the hypothetical claimant might be able to perform, the VE noted that according to the DOT, a telemarketer's job was classified as semi-skilled and required frequent handling, but in his own experience certain telemarketer jobs were performed at the unskilled level with only occasional handling. Tr. 60.   In those instances where his testimony conflicted with the DOT, the VE noted that there would be an erosion in the number of jobs available, as described in the DOT, and he gave an approximation of the percentage of such reduction, based on his experience. Tr. 60.

8

After the VE identified various jobs that the hypothetical claimant could perform, at both the light and sedentary levels, the ALJ asked the VE to again review the jobs that the VE had identified and to list any ways in which the DOT descriptions conflicted with the limitations contained in the ALJ's hypothetical questions. Tr. 61–62.   In that regard, the ALJ asked the VE to specifically consider the reaching, handling and fingering requirements of the DOT descriptions. Tr. 62. In response, the VE indicated that his testimony conflicted with the DOT descriptions in certain respects that he had already noted. Tr. 62.   However, while the VE testified that the hypothetical claimant could perform the jobs that he identified even with a restriction on reaching overhead with the right arm, there was no discussion between the ALJ and VE as to which of those jobs required "reaching" generally, and why the hypothetical claimant would nevertheless be able to perform such jobs even with the lifting restriction identified by the ALJ.   In other words, the VE stated, based on his experience, that the claimant could perform the jobs, but without expressly pointing out and explaining the conflict between his testimony and the DOT with regard to the reaching requirement of those jobs.

On February 4, 2019, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of the decision. Tr. 12-25.   The ALJ applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of "obesity, cervical and lumbar degenerative disc disease, right shoulder tendinopathy and hypertension," all of which, either singly or combined, did not meet or medically equal a listed impairment. Tr. 15. The ALJ further found that Plaintiff had the following RFC:

> [C]laimant has the [RFC] to perform light work . . . except that she can push and/or pull as much as she can lift and/or carry.   She [can] occasionally handle and finger with her right upper extremity.   She can frequently feel with her right upper extremity.   She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.   She can never reach overhead on the right nor climb ladders, ropes of scaffolds, work at unprotected heights or work with moving mechanical parts.

Tr. 16.   The ALJ found that with such RFC, Plaintiff could not perform her past relevant work but could perform other jobs in the national economy about which the VE had testified. Tr. 23–24.   Consequently, the ALJ found that Plaintiff was not disabled.

Regarding the medical opinion evidence, the ALJ's discussion was quite brief. Tr. 21–22. In pertinent part, the ALJ stated that he gave "partial weight" to the opinions of Wood and Toor, "as portions of their assessments are consistent with the objective findings of record including the mild imaging scan findings, [claimant's] performance at physical examinations and the claimant's course of treatment." Tr. 21.   The ALJ gave "little weight" to Ameduri's opinion, purportedly since "a disability determination is reserved to the Commissioner."   On that point, the ALJ asserted that Ameduri's statement was "vague and fail[ed] to provide a function-by-function analysis of the claimant's work-related limitations," and that "there was no explanation given as to why [claimant's] injuries prevented her from working twenty hours per week." Tr. 22.

After providing this discussion about the medical opinion evidence, the ALJ proceeded to review the various medical findings of record and explain how, in his view, those findings supported the RFC determination. Tr. 22.

Plaintiff, represented by a new attorney (who also represents Plaintiff in this action), appealed, asserting only that the ALJ's decision was "not supported by substantial evidence."

10

Tr. 159.   Plaintiff did not attempt to submit additional evidence to the Appeals Council, nor did she identify any gaps in the record.   The Appeals Council declined to review the ALJ's ruling. Plaintiff then commenced this action.

In this action, Plaintiff contends that the Commissioner's decision denying benefits must be reversed for the following reasons: 1) the ALJ failed to develop the record by obtaining treatment notes from her primary care physician and chiropractor, which might have shed additional light on her "symptomatic hypertension," as well as her mental health problems such as "anxiety, depression and mood changes";[4] 2) the ALJ failed to properly weigh the medical opinions as required by 20 C.F.R. § 404.1257, in that he gave only a vague explanation that did not explain why some opinions were accepted and others were rejected, and failed to seek clarification from treating physician Dr. Ameduri concerning the basis for his opinion that Plaintiff was not able to work even 20 hours per week; and 3) the ALJ failed to resolve potential conflicts between the VE's testimony (based on his own personal experience concerning the requirements of particular jobs) and the DOT.[5]

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.   In particular, Defendant asserts that the record was complete and that the ALJ was not required to further develop the record, and that Plaintiff is raising her evidentiary argument for the first time before this Court after failing

---

[4]  Pl. Mem. of Law, ECF 12-1 at p. 19.

[5]  *See*, Pl. Mem. of Law, ECF No. 12-1 at p. 25 ("The decision failed to identify or explain the discrepancy between the reaching required by the jobs the ALJ found Plaintiff could perform and the reaching limitations he assigned Plaintiff in the residual functional capacity (RFC) [finding].   . . . Although the VE's testimony deviated from the DOT almost in its entirety, he did not address the discrepancy between the ALJ's finding Plaintiff could perform no overhead reaching with her dominant upper extremity and the fact that all of the job titles he gave required at least some reaching.   Neither the VE nor the ALJ took note of the fact that the DOT does not contemplate the difference between reaching overhead as opposed to any other direction.").

to raise any objection before the ALJ or Appeals Council.   Defendant also contends that the ALJ properly evaluated the medical opinions, and that the ALJ did not need to seek clarification from Dr. Ameduri since the record already contained sufficient evidence.   Finally, Defendant argues that the ALJ properly explored and resolved any potential conflicts between the VE's testimony and the DOT.

The Court has carefully reviewed and considered the parties' submissions.

DISCUSSION

The ALJ's Alleged Failure to Develop the Record

Plaintiff maintains that the ALJ erred by failing to develop the record.   On the particular facts of this case, the Court disagrees.

The legal principles applicable to this claim, involving an ALJ's duty to develop the record, are generally well settled:

> "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'" *Lopez v. Comm'r of Soc. Sec.*, 622 Fed.Appx. 59, 60 (2d Cir. 2015) (summary order) (citing 20 C.F.R. § 404.1512; *Perez*, 77 F.3d at 47 (describing duty to develop record)). "[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Eusepi v. Colvin*, 595 Fed.Appx. 7, 9 (2d Cir. 2014) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 Fed.Appx. 801, 804 (2d Cir. 2012) (unpublished opn.) (quotations and citations omitted).

*Gonzalez v. Colvin*, No. 1:15-CV-00767(MAT), 2018 WL 1040250, at \*2 (W.D.N.Y. Feb. 24, 2018).   On the other hand,

> [w]hile an ALJ does have an affirmative duty to develop the record, even if a Plaintiff is represented by counsel, the primary duty rests with Plaintiff to present evidence that he has functional limitations rendering him incapable of performing substantial gainful activity. 42 U.S.C. § 423(d)(5)(A), applicable to SSI through 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512(c), 404.1545, 416.912(c), 416.945(a)(3); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."); SSR 17-4p, 2017 WL 4736894 \*1 ("Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims.").

> Moreover, an ALJ has no obligation to obtain additional evidence when the record is already sufficiently developed to allow for a determination as to disability. *See* 20 C.F.R. §§ 404.1520b(b)(1)-(2), 416.920b(b)(1)-(2) (If the evidence is incomplete or inconsistent but sufficient for the ALJ to make a decision, he will make a decision based on the existing evidence); *see also Perez*, 77 F.3d at 48 (the ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability.").

*Daniel R. v. Comm'r of Soc. Sec.*, No. 20-CV-00589-MJR, 2021 WL 1747788, at \*6 (W.D.N.Y. May 4, 2021).

Furthermore, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Gonzalez v. Colvin*, 2018 WL 1040250, at \*3 (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted)).

13

Applying these principles to the facts as set forth above, the Court finds that the ALJ did not err.   In that regard, for example, the Court notes that Plaintiff, represented by an attorney, was given the opportunity to submit all the records that she wished to submit in support of her claim, and made no objection to the completeness of the record.   Moreover, there were no obvious gaps in the record, particularly since, for example, Plaintiff was not claiming to be disabled due to any mental impairment and had not listed her chiropractor as a treating source.

<u>The ALJ's Alleged Failure to Properly Evaluated Medical Opinion Evidence</u>

Plaintiff next contends that the ALJ failed to evaluate the medical opinion evidence as required by 20 C.F.R. § 404.1257.   The Court agrees.

It is not required that an ALJ's RFC finding perfectly correspond to a particular medical opinion.

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021).

An ALJ, though, cannot arbitrarily substitute his own lay opinion for competent medical opinion evidence. *See, e.g., Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)."). However, as just

14

mentioned, an ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular medical opinion. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also, Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

In this case, the ALJ seems to have run afoul of these rules by crafting an RFC based only "on his own judgment," meaning his own interpretation of raw medical data. Tr. 22.   In this regard, while the ALJ purportedly gave "partial weight" to the opinions of Toor and Wood, he did not explain how those opinions supported his RFC finding.   Rather, the ALJ merely listed the various medical findings that he interpreted as supporting his RFC finding. Tr. 22.

The Court also agrees that the ALJ should not have rejected the opinion of Plaintiff's treating neurosurgeon, Dr. Ameduri, that Plaintiff was incapable of working even 20 hours per week, without first attempting to obtain an explanation from Ameduri.   This is particularly so since Ameduri indicated in his letter that he was available to provide such an explanation if needed. *See, Barbera v. Barnhart*, 151 F. App'x 31, 33 (2d Cir. 2005) ("[B]ecause the ALJ generally has an affirmative obligation to develop the administrative record, the ALJ may not disregard or decline to address a treating physician's medical opinion on the grounds that the

information provided is incomplete without first attempting to obtain the missing information.")
(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996), internal quotation marks omitted).   To the
extent Defendant contends that the ALJ had no need to contact Ameduri since the medical
record was already complete, the Court disagrees.   For example, the ALJ did not have a
medical opinion concerning the effects, if any, of Plaintiff's lumbar degenerative disc disease on
Plaintiff's ability to work.   The opinions of Wood and Toor were rendered before that diagnosis
was even made.[6] Consequently, to the extent the RFC was intended to address Plainitiff's
lumbar spine problems, which were of a severity to require surgery, the ALJ's findings were
based on his own interpretation of raw medical data.   On remand, the Commissioner should
seek clarification from Dr. Ameduri about his opinion.

The ALJ's Alleged Failure to Resolve Conflicts Between the VE's Testimony
and the DOT

Plaintiff additionally maintains that the ALJ had a duty to resolve the apparent conflict
between the VE's testimony and the DOT with regard to reaching requirements.   Again, the
Court agrees.   In *Lockwood v. Commissioner*, 914 F.3d 87,92-93 & n. 4 (2d Cir. 2019)
("*Lockwood*"), the Circuit Court held that an ALJ has a duty to address such apparent conflicts,
observing that "it is the Commissioner's responsibility to obtain a reasonable explanation for any
such discrepancies, and not this Court's obligation to concoct one *post hoc*."   *Lockwood*
involved an issue similar to that presented here, about which the Circuit Court stated:

> [According to the Commissioner,] "reaching" [in the DOT] includes overhead
> reaching.   Testimony [by a VE] that a claimant with overhead reaching limitations

---

[6] Similarly, the opinion of state agency review physician Dr. Pradhan, which the ALJ also gave partial weight, was
rendered prior to Plaintiff's lumbar radiculopathy diagnosis and did not mention any issues with the lumbar spine,
except for limited range of movement. Tr. 66–74.

is capable of performing a job that the [DOT] describes as requiring "reaching," then, creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony.

*Id*. at 92 (emphasis in original, citations omitted).

Here, the ALJ asked the VE to name jobs that a claimant could perform even with a limitation on overhead reaching.   The VE listed certain jobs that required reaching, per the DOT, but that in the VE's opinion, *apparently*, did not require overhead reaching. Although the ALJ asked the VE whether his testimony conflicted with the DOT concerning reaching, the VE did not really give a responsive answer, and therefore did not address the specific conflict or explain why he held the opinion that the hypothetical claimant could perform those jobs even with an inability to reach overhead. Upon remand, the Commissioner should obtain an explanation concerning this apparent conflict.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No.12) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 14) for the same relief is denied and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Decision and Order.   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
      September 29, 2021

                                    ENTER:

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

17